### THE STATE v. CAMPBELL.

1. The purchaser of an excursion ticket, which contains a stipulation that it shall be "good for one passage on the day sold only," cannot lawfully claim a passage under it at any time, except on the day designated therein.
2. A passenger insisting to a passage by force of such spent ticket, and refusing to pay his fare, may be ejected from the cars, in compliance with the regulation of the company to that effect.
3. A passenger being thus expelled, has no right to re-enter the cars upon producing, after his expulsion, a regular ticket, which, while in the cars, he had kept back, presenting the spent ticket as his sole passport.

This case was certified by the Oyer and Terminer of Essex, for the advisory opinion of this court, and was argued

before the CHIEF JUSTICE, and Justices VREDENBURGH, DE-
PUE, and WOODHULL.

For the state, *C. Parker.*

Contra, *N. Perry* and *T. N. McCarter.*

The opinion of the court was delivered by

THE CHIEF JUSTICE.   The right of the defendant to put
out of the cars the passenger whose ejectment has given rise
to this indictment, appears to me too plain for discussion.
This passenger had purchased what is called an excursion
ticket, that is, a ticket which gave to him the right to go
from New Brunswick to New York, and to return on the
same day.   For this he paid less than he would have been
obliged to pay, if he had purchased a ticket in going, and
another in returning.   It was expressly declared, on the
face of the ticket thus sold, that it was " good for one pas-
sage on the day sold only."   The passenger, when he ac-
quired his right of passage, was fully aware of this stipulation.
Here then was a contract entered into, with a full compre-
hension of its terms, between these parties, and I am entirely
at a loss to perceive even the slightest ground to call its
validity in question.   As to the suggestion, that the company
could not impose the requisition that the passenger should
not use the ticket for which he paid, except on the day on
which it was issued, the answer is, that such condition was
not a regulation of the business of the company, but was
one of the terms of the contract of the passenger.   The com-
pany, by force of their duty as common carriers, were under
no obligation to sell to the passenger at New Brunswick, a
ticket giving him the right to return from New York ; much
less could they be called on to sell such right to return, at a
less rate than the usual fare.   The provision, then, that the
ticket sold should not be good, except on the day on which
it was issued, was one of the stipulations of the passenger's
agreement, which he was not at liberty to repudiate.   The
consequence is, that when such passenger exhibited, at a
subsequent day, this ticket as his sole passport to ride on the

cars of the company, he presented himself in the light of one claiming a privilege which he had, in the clearest manner, agreed not to assert. Such a position is not consistent with either law or justice. According to his own showing, the passenger was in the cars without right, and the defendant, as the agent of the company, and in pursuance to its regulation to that effect, was fully justified in ordering his removal.

Nor do I think there is any more difficulty on the second head of this case.

The passenger above alluded to was removed from the cars at the depot in Newark. There is no pretence that any unnecessary force was used in the expulsion. The complaint is, that after such expulsion, and before the cars started, the passenger exhibited to the defendant, who was the conductor of the train, another ticket which he had purchased at New York, and which entitled him to go to New Brunswick, and claimed, by virtue of it, the right to re-enter the cars. This claim was rejected, and the force requisite to prevent the passenger from returning into the cars was used. It is now insisted, the use of such force was unjustifiable.

To make intelligible the application of the law to the case, the circumstances must be understood. They were these: the passenger who was expelled had purchased, at the depot in New York, this ticket, which he produced and showed, for the first time, on the platform at the station at Newark. At the time that he provided himself with it, he expected to have trouble with the conductor, as it was then his intention to insist on his right to use the return ticket, which was spent. Being called on by the conductor, on two several occasions, to show his ticket, he produced the spent one, keeping the other out of view, so that the conductor was not aware of its possession by him, while he remained in the cars. Having arrived at the Newark station, he was informed he must pay his fare or leave the cars. He refused to do either act. The conductor then declared his intention to delay the train until the passenger paid his fare or left the cars, and accordingly he sent back a flag, to warn a

train that was nearly due at Newark. This produced excitement; and when the employés of the company were called in, the acquaintances of the recreant passenger collected around him and endeavored to prevent his being put out. The passenger himself resisted by clinging to the seats. After a delay of twelve minutes he was ejected. During this time the other train, which had been warned of the danger, arrived.

It is presumed that no person will deny that here was a transaction which, if often repeated, would deprive railroad travel of some of its security and much of its comfort. The annoyance and danger to be apprehended from such an affair, are too obvious to need exposition. It is clear, therefore, that some person was to blame. That person was certainly not the company or its agents. The company, through its agents, simply enforced a plain legal right in a legal mode. The whole fault must be laid to the passenger; and the only question which can possibly arise is, whether his conduct was such as to justify the conductor in refusing him re-admission into the cars. The proposition is simply this: if a passenger refuses to show his ticket on a legal demand made, and refuses to leave the cars on request, and is put out, after resistance, has he, as a matter of law, the privilege to return to the cars upon the production, at this stage of the occurrence, of his ticket? This proposition must be answered in the affirmative, in order, in this case, to hold that the defendant was guilty of a wrong. In my opinion, such a doctrine is not consistent with either law or good sense. Its establishment would, practically, annul the power of a railroad company to require passengers to show their tickets; for it is obvious, that if the only penalty on a refractory passenger is a momentary expulsion, he will be enabled, at a small sacrifice, by repeated refusals, to compel an abandonment of the demand upon him. A passenger takes his ticket subject to the reasonable regulations of the company; it is an implied condition in his contract, that he will submit to such regulations; and if he wilfully refuses to be bound by them,

by so doing he repudiates his contract, and after such repudiation cannot claim any right under it. In this case, the passenger, with full knowledge of the regulation in question, refused to show his ticket, which alone gave him the right to a seat in the cars. The exhibition of the spent ticket did not help the matter; he stands, therefore, on the same footing as any other passenger who, when properly applied to, will not exhibit the evidence of his rightful presence in the car. If this particular passenger had the legal right to re-enter the cars after his tortious refusal, so, on all similar occasions, will all other passengers be entitled to the same right. We come thus to the result, that railroad passengers may violate, with full knowledge, a legal regulation of a company in whose cars they are carried; they may resist, short of a breach of the peace, all attempts to expel them; they may, by this means, at a loss to the company and to the peril of the public, disarrange the order of successive trains upon the road, with regard to each other; they may occasion a tumult and disorder in the car in which they may happen to be; and, after being expelled, they may immediately return to repeat, if so inclined, the same misconduct. I must think it requires no argument to show that such a license to do evil as this does not exist. The defendant was entirely justified in forming the rational conclusion, that the passenger in question, if re-admitted into the cars, would again misconduct himself; and, under such circumstances, it was his duty to exclude him.

The Court of Oyer and Terminer should be advised to set aside the verdict.